**CLEAN AIR COUNCIL, Plaintiffs,**

v.

**Bradley L. MALLORY, Secretary, Pennsylvania Department of Transportation, and James M. Seif, Secretary, Pennsylvania Department of Environmental Protection, Defendants.**

**Civil Action No. 01–179.**

United States District Court,
E.D. Pennsylvania.

Oct. 18, 2002.

Joseph Otis Minott, Philadelphia, PA, David S. Baron, Earthjustice Legal Defense Fund, Washington, DC, for Plaintiffs.

Audrey F. Miner, Harrisburg, PA, Robert J. Shea, Harrisburg, PA, for Defendants.

### MEMORANDUM

DuBOIS, District Judge.

On January 12, 2001, plaintiff, Clean Air Council, filed a Complaint against defendant Bradley L. Mallory, in his capacity as the Secretary of the Pennsylvania Department of Transportation ("PennDOT"), and defendant, James M. Seif, in his capacity as the Secretary of the Pennsylvania Department of Environmental Protection ("DEP") (together, "defendants"). In the Complaint, plaintiff seeks to enforce the requirements of the Clean Air Act (the "CAA"), 42 U.S.C. §§ 7401–7627, under its citizen suit provision[1] and asks for declaratory and injunctive relief.

Presently before the Court are Plaintiff's Motion for Summary Judgment and Defendants' Cross–Motion for Summary Judgment. The Court heard oral argu-

---

**1.** The citizen suit provision of the CAA provides in relevant part:

Except as provided in subsection (b) of this section, any person may commence a civil action on his own behalf—

(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation. . . .

The district courts shall have jurisdiction . . . to enforce such an emission standard or limitation . . .

42 U.S.C. § 7604(a).

ment on the motions. Upon consideration of the evidence in the record and the arguments of counsel, the Court denies defendants' Motion and grants plaintiff's Motion in part. Specifically, the Court declares that defendants Bradley L. Mallory, Secretary of PennDOT, and James M. Seif, Secretary of DEP, are in violation of "emission standards or limitations" within the meaning of the CAA, 42 U.S.C. § 7604(a)(1), (f), because the defendants failed to fully implement the motor vehicle inspection and maintenance program that is required by Pennsylvania's State Implementation Plan ("SIP"). The Court concludes that injunctive relief is appropriate and will conduct an evidentiary hearing to determine the schedule on which defendants will be required to fully implement the final motor vehicle inspection and maintenance program in the five-county Philadelphia area, as mandated by the United States Environmental Protection Agency ("EPA")-approved Pennsylvania SIP. Plaintiff will be granted leave to file a motion seeking attorney's fees and costs after the evidentiary hearing.

## I. BACKGROUND

The purpose of the CAA is "(1) to protect and enhance the Nation's air resources . . . (2) to initiate and accelerate a national research and development program to achieve the prevention and control of air pollution; (3) to provide technical and financial assistance to State . . . governments [in the] execution of their air prevention and pollution control programs; and (4) to encourage and assist the development and operation of regional air pollution prevention and control programs." *Id.* § 7401(b). Under the Act, the EPA must establish National Ambient Air Quality Standards ("NAAQS") for certain air pollutants. *Id.* § 7409(a). Primary

NAAQS must be set at a level that will "protect the public health" with "an adequate margin of safety," *id.* § 7409(b)(1), and the EPA must establish secondary NAAQS at a level that will "protect the public welfare from any known or anticipated adverse effects associated with the presence of such air [pollution] in the ambient air." *Id.* § 7409(b)(2).

At issue in this action are alleged violations that relate to the requirements for attainment of the 1–hour NAAQS adopted by the EPA for ozone. 40 C.F.R. §§ 50.9. The CAA classifies an area as "nonattainment" for a particular air pollutant if the area does not satisfy the primary or secondary NAAQS for that particular air pollutant. 42 U.S.C. § 7407(d)(1)(A)(i). It further subdivides ozone nonattainment areas into "marginal," "moderate," "serious," "severe," or "extreme" based upon the severity and persistence of nonattainment. *Id.* §§ 7407(d), 7511(a). Effective November 15, 1990, the Administrator of the EPA designated and classified the Metropolitan Philadelphia Interstate Air Quality Control Region (Pennsylvania New Jersey Delaware) (the "Philadelphia ozone nonattainment area")[2] as a severe ozone nonattainment area. Complaint ¶ 16; Answer ¶ 16. The Philadelphia ozone nonattainment area continues under such designation and classification to the present. *Id.*

The CAA mandates that states with ozone nonattainment areas submit to the EPA a state SIP setting forth the air pollution control measures by which the state will attain the ozone NAAQS by specified deadlines. 42 U.S.C. §§ 7502(c), 7511a(b)(1), (c), (d). Under the 1990 Amendments to the CAA, those states with "serious" and "severe" ozone nonattainment must provide for "enhanced" inspection and maintenance ("I/M") pro-

2. This area includes Bucks, Chester, Delaware, Montgomery, and Philadelphia Coun- ties in Pennsylvania and parts of Delaware and New Jersey. 40 C.F.R. § 81.15.

grams. The EPA is required to review each proposed SIP and approve or disapprove it. *Id.* § 7410(k). If the EPA approves the SIP in whole or in part, the approved portion(s) is then deemed to be incorporated into the state's "applicable implementation plan." *Id.* §§ 7413, 7602(q), 7604. A state may choose not to submit a SIP. In such a circumstance the EPA must devise a Federal Implementation Plan ("FIP"). *Id.* § 7410(c)(1).

The Commonwealth submitted proposed SIP revisions to the EPA for the attainment and maintenance of the ozone NAAQS in the Philadelphia ozone nonattainment area (the "Philadelphia SIP"). Complaint ¶ 17, Answer ¶ 17. In the Philadelphia SIP, the Commonwealth proposed implementing an enhanced motor vehicle inspection and maintenance program ("enhanced I/M") in the five Philadelphia counties located in the Philadelphia ozone nonattainment area under which automobiles that fail an emission test must be repaired to reduce their emission of ozone-forming pollutants unless exempted by waiver. Complaint ¶ 17, Answer ¶ 17. The EPA approved the Philadelphia SIP containing the enhanced I/M program and incorporated it into the Commonwealth's SIP (the "approved SIP") by Federal Register notices dated December 28, 1997; September 2, 1998; June 8, 1999; and June 17, 1999. Complaint ¶ 17; Answer ¶ 17.

The approved SIP mandates that the Commonwealth use an acceleration simulation mode ("ASM") test for emission testing of all 1981 and newer model year vehicles and all 1984 and newer model year light-duty trucks registered in the five-county Philadelphia area. Complaint ¶ 18; Answer ¶ 18; 67 Pa.Code § 177.51(f)(1). The approved SIP further requires that the Commonwealth employ specific pass/fail emission standards, or "cutpoints," for the ASM emissions tests. *Id.* § 177.204(2)(ii); 67 Pa.Code Ch. 177

App. A § 1. Two sets of cutpoints with corresponding compliance deadlines are required under the approved SIP: (1) compliance with start-up or initial cutpoints for the first phase of the program commencing October 1, 1997, 67 Pa.Code Ch. 177 App. A §§ 1(a)(1),(3); and (2) compliance with final cutpoints for the second phase of the program commencing December 1, 1998 and continuing thereafter. *Id.* §§ 1(a)(2),(3); Complaint ¶ 19; Answer ¶ 19.

DEP and PennDOT have a duty to implement the enhanced I/M program. *See* 35 PA. CONS.STAT. ANN. § 4004 ("[DEP] shall have power and its duty shall be to—(1) Implement the provisions of the Clean Air Act in the Commonwealth …"); 75 Pa. Cons.Stat. Ann. § 4706(b)(1) ("… if the secretary shall certify that a system is required to comply with the Clean Air Act … the department [of Transportation] shall establish and administer an enhanced emission inspection program …"); *Id.* § 4706(e) ("… [PennDOT] shall promulgate such regulations as may be necessary to implement the emission inspection program …"). Defendants, as heads of their state departments, are responsible for implementation of the enhanced I/M program. 71 Pa. Cons.Stat. Ann. § 66. To do so, defendants must fully implement the final cutpoints in Pennsylvania's approved SIP. 67 Pa.Code Ch. 177 Appendix A.

Defendants complied with the first phase of the program and fully implemented the initial start-up cutpoints. Defendants admit that they have failed to fully implement the final cutpoints for the second phase of the enhanced I/M program with which the approved SIP required compliance by December 1, 1998. *See* Complaint ¶ 22; Answer ¶ 22. By letter dated May 25, 2000, Secretary Seif's designee informed the EPA that the Secretary would not fully implement the final cut-

points because the Commonwealth has "committed to a schedule whereby all model years vehicles subject to the Philadelphia-area inspection and maintenance program will be required to meet final cutpoints by the start of the 2005 ozone season" and "the Philadelphia area will ... meet its 2002 emission reduction milestone." Answer ¶ 20. It is this noncompliance which is the gravamen of plaintiff's Complaint.

Section 7604(b)(1)(A) of the CAA states that "[n]o action may be commenced ... under subsection (a)(1) of this section ... prior to 60 days after the plaintiff has given notice of the violation (i) to the Administrator, (ii) to the State in which the violation occurs, and (iii) to any alleged violator of the standard, limitation, or order...." 42 U.S.C. § 7604(b)(1)(A). On January 13, 2000, plaintiff sent a Notice of Intent to Sue, pursuant to 42 U.S.C. § 7604(b), by certified letter to defendants and the Administrator of the EPA. Complaint ¶ 5; Answer ¶ 5. Over 60 days have elapsed since Clean Air Council served notice as required by 42 U.S.C. § 7604(b)(1)(A) and the violations of which plaintiff complains in the notice are continuing. *See* Complaint ¶ 22; Answer ¶ 22. Thus, plaintiff has satisfied the required 60-day notice under 42 U.S.C. § 7604(b)(1)(A).

In the Complaint plaintiff alleges that, "by failing to fully implement the state's enhanced vehicle inspection and maintenance ("I/M") program as required by Pennsylvania's state implementation plan," Secretary Mallory and Secretary Seif violated and continue to violate the CAA. Complaint ¶ 2. Plaintiff maintains that the failure of defendants to meet the applicable December 1, 1998 deadline to fully implement the SIP's emission test pass/fail standards ... for motor vehicles in the five-county Philadelphia ozone nonattainment area ... violates 'an emission stan-

dard or limitation' under the Act. Complaint ¶ 2, 3. To remedy this violation, plaintiff requests that the Court "[d]eclare that [d]efendants are in violation of 'emission standards or limitations' within the meaning [of] 42 U.S.C. § 7604(a)(1), (f)" and direct "[d]efendants to forthwith impose, fully implement, and fully comply with the second-phase cutpoint in the five-county Philadelphia area as required by the approved SIP." Complaint ¶ 30. Plaintiff also seeks, *inter alia*, "costs and reasonable attorney and expert witness fees." *Id.*

Plaintiff filed its Motion for Summary Judgment on March 21, 2001; on April 27, 2001, defendants filed the Commonwealth Defendants' Cross–Motion for Summary Judgment. On May 29, 2001, plaintiff filed a Reply Brief in Support of Plaintiff's Motion for Summary Judgment and Opposition to Defendants' Cross–Motion for Summary Judgment, and on June 12, 2001, defendants filed their Reply Brief in Support of Commonwealth Defendants' Cross–Motion for Summary Judgment. Plaintiff then filed an Unopposed Motion for Leave to Submit New Authority—*Cox v. Dallas,* 256 F.3d 281 (5th Cir.2001)—on the ground that it refutes defendants' sovereign immunity argument. The Court granted that motion by Order dated July 17, 2001. On September 7, 2001, the Court held oral argument and granted the parties leave to file supplemental memoranda on the issue of whether plaintiff's claims under the CAA allege violations of state or federal law. Both parties thereafter filed supplemental memoranda.

## II. *STANDARD OF REVIEW*

"If the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law[,]" summary judgment shall be granted. Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Supreme Court has explained that Rule 56(c) requires "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Therefore, "a motion for summary judgment must be granted unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 618 (3d Cir.1987) (citing *Anderson* and *Celotex Corp.*).

In considering a motion for summary judgment, the evidence must be considered in the light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (quoting *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). However, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Therefore, "[i]f the evidence [offered by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). On the other hand, if reasonable minds can differ as to the import of the proffered evidence that speaks to an issue of material fact, summary judgment should not be granted.

### III. DISCUSSION

In its motion, plaintiff argues that Secretaries Seif and Mallory have admitted that they failed to fully implement the final emission standards of the enhanced I/M program by the applicable SIP implementation deadline of December 1, 1998 and are thus in violation of the CAA. Pl.'s Mot. for Summ. J. at 6. Plaintiff seeks to enforce compliance with the implementation deadline and the final cutpoints through the CAA's citizen suit provision, 42 U.S.C. § 7604, and asks the Court to direct defendants to fully implement those final emission standards.

Defendants, on the other hand, ask this Court to grant summary judgment in their favor on the ground that the suit is barred by the Eleventh Amendment. Alternatively, defendants contend that the parties have presented genuine issues of material fact that preclude summary judgment. With respect to a remedy, defendants argue that the Court should assert its equitable powers and not issue an injunction. The Court first turns to defendants' sovereign immunity argument.

### A. Sovereign Immunity under the Eleventh Amendment / Applicability of the Ex Parte Young Exception to the Citizen Suit Provision of the Clean Air Act

The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI. This "amendment has been interpreted to make states generally immune from suit by private parties in federal court." *MCI Telecomm. Corp. v. Bell Atlantic–Pennsylvania*, 271

F.3d 491, 503 (3d Cir.2001) (citations omitted). "This immunity extends to state agencies and departments." *Id.* (citing *C.H., ex rel. Z.H. v. Oliva,* 226 F.3d 198, 201 (3d Cir.2000) (en banc)). There are three exceptions to Eleventh Amendment immunity: "1) congressional abrogation, 2) state waiver, and 3) suits against individual state officers for prospective relief to end an ongoing violation of federal law." Id. The third exception to Eleventh Amendment immunity was created by *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).[3]

Plaintiff alleges in the Complaint that defendants, in their capacity as Commonwealth officials, violated and continue to violate the CAA by failing to fully implement the final emission standards in the Philadelphia SIP. Thus, they argue that the doctrine of *Ex parte Young* is applicable to this case.

■ Under the *Ex parte Young* doctrine, "individual state officers can be sued in their individual capacities for prospective injunctive and declaratory relief to end continuing or ongoing violations of federal law." *MCI Telecomm.* at 506. Such a suit (one alleging that a state officer violated federal law) is not considered a suit against the state, and thus is not barred by the Eleventh Amendment. The theory is that, because a state cannot authorize unconstitutional or illegal conduct, the state officer's action is *ultra vires* and "stripped of [its] official or representative character." *Ex parte Young,* 209 U.S. at 160, 28 S.Ct. 441. This doctrine, which applies to violations of the United States

Constitution and federal statutes, is "accepted as necessary to permit federal courts to vindicate federal rights and hold state officials responsible to the 'supreme authority of the United States.' " *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 105, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (quoting *Ex parte Young,* 209 U.S. at 160, 28 S.Ct. 441).

Relief under the *Ex parte Young* doctrine is not unlimited; it is on these limitations that defendants rely in advancing the argument that the *Ex parte Young* exception to the Eleventh Amendment is not available to enforce violations of the CAA against state officials. Defendants advance three grounds in support of that argument: (1) the detailed remedial scheme of the CAA evidences Congress' intention to restrict the availability of *Ex parte Young* actions to enforce violations of the statute against state officials; (2) the Commonwealth has a special state sovereignty interest in enforcement of its approved SIP; and (3) plaintiff seeks only to enforce state, not federal law. The Court addresses each argument in turn.

### 1. Detailed Remedial Scheme—Applicability of *Ex parte Young* after *Seminole Tribe*

In *Seminole Tribe of Florida v. Florida* the Supreme Court ruled that the *Ex parte Young* exception to the Eleventh Amendment is not available where "Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right." 517

---

**3.** The Court notes that defendants first argue in their cross-motion for summary judgment that this suit is barred by the doctrine of sovereign immunity because Congress did not have the power to abrogate the Commonwealth's Eleventh Amendment immunity from suit under the Clean Air Act. That question— whether Congress has the power to abrogate the Commonwealth's sovereign immunity

from suit—is not relevant to the instant action because defendants are Commonwealth officials, not the Commonwealth or one of its agencies. Thus, the proper inquiry, which the Court conducts above, is whether plaintiff may maintain the instant *Ex parte Young* action against Secretaries Seif and Mallory to enforce their alleged violations of the CAA.

U.S. 44, 74, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). The Court in Seminole Tribe examined the remedial scheme of the Indian Gaming and Regulatory Act (the "IGRA")—an Act that provides a statutory basis for the operation and regulation of gaming by Indian tribes, *see* 25 U.S.C. § 2502—and concluded that Congress' decision to include an elaborate remedial scheme in the Act demonstrated that it did not intend to subject states and state officials to liability under the statute. *Id.* at 75, 116 S.Ct. 1114 ("By contrast with this quite modest set of sanctions, an action brought against a state official under *Ex parte Young* would expose that official to the full remedial powers of the federal court, including, presumably, contempt sanctions."). The Court reasoned that "[i]f § 2710(d)(3) [of the IGRA] could be enforced in a suit under *Ex parte Young*, [the detailed remedial scheme] would have been superfluous; it is difficult to see why an Indian tribe would suffer through the intricate scheme [of this Act] when more complete and more immediate relief would be available under *Ex parte Young*." *Id.* On this basis, the Court held that the petitioner in Seminole Tribe could not enforce the IGRA against a state official—in that case, the Governor of Florida—by utilizing the doctrine of *Ex parte Young.* *Id.* at 75–76, 116 S.Ct. 1114.

Defendants, relying on *Seminole Tribe,* argue that plaintiff may not enforce defendants' alleged violations of the CAA under the doctrine of *Ex parte Young* because, similar to the remedial scheme of the IGRA, the "detailed remedial scheme" set forth by Congress in the CAA manifests Congress' intention "to impose upon the State a liability that is significantly more limited than would be the liability imposed upon the state officer under *Ex parte Young.*" *Id.* at 75–76, 116 S.Ct. 1114. In advancing this argument, defendants point out that the CAA provides two specific remedies for a state's failure to implement provisions of an EPA-approved SIP: (1) imposition of sanctions under 42 U.S.C. §§ 7509(a)(4) and (b); and (2) enforcement of the EPA-approved SIP directly by the EPA pursuant to 42 U.S.C. § 7413(a)(2). These provisions, according to defendants, demonstrate that Congress contemplated the EPA as a necessary part of the CAA's remedial scheme and that permitting this action to go forward under *Ex parte Young,* without involvement of the EPA, would constitute a judicial enlargement of the remedies chosen by Congress to enforce the CAA and make the statute's remedial scheme superfluous. Defs.' Brief at 13. Defendants further assert that the CAA's remedial scheme allows private parties to compel the EPA to fulfill its nondiscretionary duties required by the statute by filing a citizen suit against the Administrator of the EPA. *See* 42 U.S.C. § 7604(a)(2).

■ Although the Court agrees that Seminole Tribe narrowed the applicability of the *Ex parte Young* doctrine in certain instances, that decision has no impact on the applicability of *Ex parte Young* to the instant action. This Court, relying on the language of the statute and *Seminole Tribe,* concludes that the CAA contains a limited remedial scheme; Seminole Tribe thus does not preclude plaintiff from maintaining the instant action under *Ex parte Young.*

It is significant that Congress, in enacting the CAA, included a citizen suit provision, 42 U.S.C. § 7604, in the statute's remedial scheme; in contrast, the IGRA contains no such provision. That provision of the CAA permits private citizens to utilize civil suits to enforce the statute:

> [A]ny person may commence a civil action on his own behalf ... against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent per-

mitted by the Eleventh Amendment to the Constitution) who is alleged to have violated ... or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation. 42 U.S.C. § 7604(a)(1).

The citizen suit provision plays an integral role in the remedial scheme of the CAA; it serves "to both goad the responsible agencies to more vigorous enforcement of the anti-pollution standards and, if agencies remain inert, to provide an alternative enforcement mechanism." *Baughman v. Bradford Coal Co., Inc.,* 592 F.2d 215, 218 (3d Cir.1979). By including the terms "any person" and "to the extent permitted by the Eleventh Amendment," this Court finds that Congress clearly meant to allow private citizens to use this provision as a means of private enforcement against state officials within the limits of the Eleventh Amendment. *See Cox,* 256 F.3d at 309 ("That the RCRA authorizes suits against 'any person' 'to the extent permitted by the eleventh amendment' clearly indicates that Congress specifically intended to permit suits against states within the bounds of the [Eleventh] Amendment.").

This conclusion is consistent with the Supreme Court's opinion in *Seminole Tribe.* In footnote 17 of *Seminole Tribe,* the Court addressed the relative complexity of remedial schemes when it distinguished the IGRA's remedial scheme from remedial schemes set forth in statutes such as the Clean Water Act (the "CWA"):[4]

[W]e do not hold that Congress cannot authorize federal jurisdiction under *Ex parte Young* over a cause of action with a limited remedial scheme ... In this regard, [the IGRA] stands in contrast to the statutes [such as the CWA] cited by the dissent as examples where lower courts have found that Congress implicitly authorized suit under *Ex parte Young. Compare* 28 U.S.C. § 2254(e)(sic) (federal court authorized to issue an "order directed to an appropriate State official") [*with* ] 33 U.S.C. § 1365(a) (authorizing a suit against "any person" who is alleged to be in violation of relevant water pollution laws).

517 U.S. at 75 n. 17.

■ Given that the language of the citizen suit provision in the CAA is identical to language of the CWA's citizen suit provision, this Court interprets the CAA's remedial scheme in a manner that is consistent with the Supreme Court's interpretation of the CWA's remedial scheme in Seminole Tribe and rules that, by including the citizen suit provision in the CAA, Congress implicitly authorized enforcement of the CAA against state officials under the doctrine of *Ex parte Young.* At least one other court, relying on footnote 17 of Seminole Tribe and the identical nature of language of the CWA's and CAA's citizen suit provisions, has drawn the same conclusion, stating "Seminole Tribe does not support the position that Congress did not intend to authorize federal jurisdiction over an action brought pursuant to the CAA." *Sweat v. Hull,* 200 F.Supp.2d 1162, 1168 n. 8 (D.Ariz.2001).

In so ruling this Court has also found persuasive the decisions in a number of other post-*Seminole* cases that the citizen suit provisions of other environmental stat-

4. The CWA authorizes citizen suits "against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or State with respect to such a standard or limitation." 33 U.S.C. § 1365(a)(1).

utes—the Clean Water Act (the "CWA"), the Endangered Species Act (the "ESA"), and the Resource Recovery and Conservation Act (the "RCRA"), 42 U.S.C. § 6972 *et seq.* (1995)—are implicit legislative authorization for suit under *Ex parte Young.* In *Natural Res. Def. Council v. California Dep't of Transp.,* 96 F.3d 420 (9th Cir. 1996), for example, the Ninth Circuit held that a private citizen could bring suit under *Ex parte Young* against a state officer to enforce violations of the CWA, explaining that Congress intended to make the public a part of the remedial scheme in enforcement of the statute by including a citizen suit provision in the statute. *Id.* at 424. Similarly, the First Circuit concluded that the specific legislative reference to the Eleventh Amendment in the citizen suit provision of the ESA was conclusive evidence that the public could seek an injunction against a state officer for violation of the ESA. *Strahan v. Coxe,* 127 F.3d 155, 166 (1st Cir.1997). That court ruled that *Ex parte Young* applied to those cases seeking prospective equitable relief against state officials for violations of the ESA. *Id.* at 166–67.

Likewise, the Fifth Circuit, applying Seminole Tribe, determined that the RCRA is a statute that permitted an *Ex parte Young* action. *See Cox,* 256 F.3d at 308–09; *see also Prisco v. State of New York,* 1996 WL 596546, No. 91 Civ. 3990(RLC) (S.D.N.Y. Oct. 16, 1996) (ruling that the inclusion of a citizen suit provision in a statute evidenced Congress' intention that *Ex parte Young* actions be a part of the remedial scheme of the statute). In so ruling the Fifth Circuit relied on Congress' explicit reference to the Eleventh Amendment in the RCRA citizen suit provision and, citing footnote 17 in *Seminole Tribe,* on the similarity between the citizen suit provisions of the CWA and RCRA. *Cox,* 256 F.3d at 308–09. The court concluded that "RCRA embraces the *Ex parte Young*

doctrine as a feature of its remedial scheme." *Id.* at 309.

The Court concludes that, unlike petitioner in *Seminole Tribe,* plaintiff in this case only seeks to obtain injunctive relief under the statute's limited remedial scheme. Accordingly, plaintiff's CAA claim against defendants is not barred by *Seminole Tribe's* exception to the *Ex parte Young* doctrine.

### 2. Special State Sovereignty Interest—Applicability of *Ex parte Young* after *Coeur d'Alene*

Defendants also rely on Justice Kennedy's opinion in *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997), as authority for the proposition that the doctrine of *Ex parte Young* is inapplicable to the instant action. They contend that, applying the case-by-case balancing approach adopted by Justice Kennedy's opinion in *Coeur d'Alene,* two factors counsel against permitting the instant action to proceed under the doctrine of *Ex parte Young:* (1) plaintiff has an adequate state forum for resolving its dispute with respect to implementation of the final ATM cutpoints, Def's Summ. J. Brief, at 14, and (2) plaintiff's claim implicates Pennsylvania's "special sovereignty interest" in the design of its enhanced I/M program and enforcing (or not enforcing) state regulations. Defs.' Reply, at 3–4. This Court rejects defendants' argument; it concludes that defendants misinterpret the precedential value of *Coeur d'Alene* and that the instant case is distinguishable from *Coeur d'Alene.*

In *Coeur d'Alene,* an Indian tribe filed suit against Idaho state officers contending that, under federal law, it should hold title to the banks, beds, and submerged lands of Lake Coeur d'Alene and the various navigable rivers and streams forming part of its waterway. *See Coeur d'Alene,* 521

U.S. at 264, 117 S.Ct. 2028. In the principal opinion authored by Justice Kennedy, a five-Justice majority ruled that *"Young* did not permit the action because the Tribe's suit, although brought against individual officers for prospective relief from an ongoing violation of federal law, was the functional equivalent of a quiet title action against the state, which, if successful, would divest the state of title and sovereign control over the waters and submerged lands." *MCI Telecomm.*, 271 F.3d at 506–07 (citing *Coeur d'Alene*, 521 U.S. at 283, 117 S.Ct. 2028).

Justice Kennedy continued, in the principal opinion, by suggesting "that *Young* is not applicable to every case in which prospective relief is sought against an individual officer from an ongoing violation of federal law," *MCI Telecomm.*, 271 F.3d at 507 (citing *Coeur d'Alene*, 521 U.S. at 270, 117 S.Ct. 2028), and that a court, in determining whether to apply *Ex parte Young*, must conduct a case-by-case balancing inquiry, carefully balancing the federal and broad state interests. Under this narrow approach, Justice Kennedy stated the doctrine of *Ex parte Young* applies in only two situations: first, where there is no state forum available to vindicate federal rights, *see Coeur d'Alene*, 521 U.S. at 270, 117 S.Ct. 2028, and second, where the case calls for the interpretation of federal law. *See id.* at 274, 117 S.Ct. 2028.

That part of the principal opinion adopting a case-by-case balancing approach to *Young* was joined only by the Chief Justice. Justice O'Connor, joined by Justices Scalia and Thomas, authored a separate opinion that, in a partial concurrence, rejected the case-by-case balancing approach, stating that "[t]his approach unnecessarily recharacterizes and narrows much of our *Young* jurisprudence." *Id.* at 291, 117 S.Ct. 2028. Justice O'Connor explained that "[t]he principal opinion replaces a straightforward inquiry into whether a complaint alleges an ongoing violation of federal law and seeks [prospective] relief ... with a vague balancing test that purports to account for a 'broad' range of unspecified factors," *id.* at 296, 117 S.Ct. 2028, and concluded that under Supreme Court precedent, "a *Young* suit is available where a plaintiff alleges an ongoing violation of federal law, and where the relief sought is prospective rather than retrospective." *Id.* at 294, 117 S.Ct. 2028. In dissent, Justice Souter, joined by Justices Stevens, Ginsburg, and Breyer, disagreed with the majority's ruling that *Ex parte Young* did not authorize the action, but observed that Justice O'Connor's partial concurrence "reject[ed] the lead opinion's call for ... case-by-case balancing," and noted that "there is reason for great satisfaction that Justice O'Connor's view is the controlling one." *Id.* at 297–98, 117 S.Ct. 2028.

The Third Circuit has expressly rejected the case-by-case balancing approach suggested by Justice Kennedy in *Coeur d'Alene*, and ruled that *"Young* continues to permit actions against state officers for prospective relief from ongoing violations of federal law; no case-by-case balancing is necessary or proper." *MCI Telecomm.*, 271 F.3d at 508. In doing so that court explained that "Justice Kennedy's opinion in *Coeur d'Alene* cannot be read to establish the controlling standard for *Young*. Seven Justices rejected such balancing and agreed that *Young* should apply when an action against a state officer alleges an ongoing violation of federal law and seeks prospective relief." 271 F.3d at 507 (citing *Coeur d'Alene*, 521 U.S. at 296, 117 S.Ct. 2028). In so ruling the court relied, in part, on the Fifth Circuit's decision in *Earles v. State Bd. of Certified Pub. Accountants of Louisiana*, 139 F.3d 1033, 1039 (5th Cir.1998), "that, because a majority of the Supreme Court would adhere to the more traditional application of

*Young,* the Fifth Circuit would also continue to do so." 271 F.3d at 507. Adhering to Third Circuit precedent, this Court rejects defendants' assertion that it should apply a case-by-case balancing approach to determine whether *Young* applies to the instant action.

However, the Third Circuit has recognized that "*Coeur d'Alene* did carve out one narrow exception to *Young:* an action cannot be maintained under *Young* in those unique and special circumstances in which the suit against the state officer affects a unique or essential attribute of state sovereignty, such that the action must be understood as one against the state." *Id.* at 508. For example, as recognized by the Supreme Court in *Coeur d'Alene,* a state has a special state sovereignty interest in the state's title, control, possession, and ownership of water and land. 521 U.S. at 287, 117 S.Ct. 2028.

■ Attempting to implicate this narrow exception, defendants argue that, similar to the state of Idaho in *Coeur d'Alene,* "[t]he Commonwealth has a 'special sovereignty interest' both in the design of its enhanced I/M program and enforcing (or not enforcing) state regulations." Defs.' Reply, at 4. The Court does not find the comparison persuasive. The discrete remedial action sought by plaintiff in this case—implementation of the final emission cutpoints contained within the EPA-approved Pennsylvania SIP—does not amount to the type of expansive and permanent intrusion on sovereignty interests sought by plaintiffs in *Coeur d'Alene.* Accordingly, the Court rules that *Coeur d'Alene* does not preclude plaintiff's use of *Ex parte Young* in this action.

**3. Enforcement of Federal Law—Applicability of *Ex Parte Young* Under *Pennhurst***

■ Prospective relief enjoining violations of state rather than federal law falls outside the scope of the *Ex parte Young* exception to the Eleventh Amendment immunity. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Citizens cannot use the *Ex parte Young* exception to enforce violations of state law.

Plaintiff, relying on *Concerned Citizens of Bridesburg v. Phila. Water Dep't,* 843 F.2d 679 (3d Cir.1988), argues that it is seeking to enjoin a violation of federal law, not state law. In that case, the Third Circuit held that "[t]he Pennsylvania SIP is a federal regulation promulgated pursuant to the Clean Air Act," *id.* at 680, and affirmed the district court's pretrial determination that the plaintiff's complaint, alleging a violation of city and state odor regulations that were part of the EPA-approved Pennsylvania SIP, is "a cognizable federal claim under the Pennsylvania SIP." *Id.* at 681. Defendants, on the other hand, although conceding in their brief that "the state regulation at issue, because it was incorporated into the SIP, has the force and effect of a federal regulation," Defs.' Reply Br. at 3 n. 5, asserted at oral argument that, under *Pennhurst,* plaintiff cannot use *Ex parte Young* to enforce violations of Pennsylvania's EPA-approved SIP because plaintiff alleges only violations of state law, not federal law. Defendants maintain that "Pennsylvania's SIP and the thereinto incorporated vehicle inspection emission inspection regulations set forth at 67 Pa.Code § 177, have not been incorporated into federal law, at least for purposes of a citizen suit like this one." Defs.' Supp. Br. at 1. In advancing this argument, defendants rely on the Fourth Circuit's decision in *Bragg v. West Virginia Coal Ass'n,* 248 F.3d 275 (4th Cir. 2001), which held, *inter alia,* that state law must be explicitly incorporated into federal law for enforcement purposes. *Id.* at 297. Alternatively, defendants contend that the provisions of the SIP that plaintiff seeks to

enforce have been incorporated into federal law for the limited "purpose [of] ... actual enforcement by [the] EPA," Defs.' Supp. Br. at 6, not by private plaintiffs.

■ Defendants also argue that *Concerned Citizens of Bridesburg* is inapposite to the instant action because it predates *Seminole Tribe* and cites to 42 U.S.C. § 7610 for its holding that the Pennsylvania SIP is a federal regulation promulgated under the CAA. *Concerned Citizens of Bridesburg*, 843 F.2d at 680. Defendants assert that § 7610 deals only with the impact of the CAA on other laws enforced by the EPA Administrator and "nonduplication of appropriations," and does not address the incorporation of state law or the SIP into federal law. Defs.' Supp. Br. at 11. This Court rejects defendants' arguments and concludes that plaintiff is seeking to enforce federal law, not state law.

The CAA requires in 42 U.S.C. § 7410 that each State submit its proposed SIP to the EPA for approval:

Each State shall, after reasonable notice and public hearings, adopt and submit to the Administrator, within 3 years (or such shorter period as the Administrator may prescribe) after the promulgation of a national primary ambient air quality standard (or any revision thereof) under section 7409 of this title for any air pollutant, a plan which provides for implementation, maintenance, and enforcement of such primary standard in each air quality control region (or portion thereof) within such State. In addition, such State shall adopt and submit to the Administrator (either as a part of a plan submitted under the preceding sentence or separately) within 3 years (or such shorter period as the Administrator may prescribe) after the promulgation of a national ambient air quality secondary standard (or revision thereof), a plan which provides for implementation, maintenance, and enforcement of such

secondary standard in each air quality control region (or portion thereof) within such State....

42 U.S.C. § 7410(a)(1). Section 7410(a)(2) further provides that each SIP shall, *inter alia*, "include enforceable emission limitations and other control measures, means, or techniques ... as well as schedules and timetables for compliance, as may be necessary or appropriate to meet the applicable requirements for this chapter ..." *Id.* § 7410(a)(2)(A); it gives the EPA the authority to accept or reject a proposed SIP, and to establish an implementation plan for states that do not submit a SIP that meets the standards of the Clean Air Act. *Id.* § 7410(a)(2), (c). Once approved by the EPA, a SIP has the force and effect of federal law, thereby permitting the Administrator to enforce it in federal court. *Id.* § 7413(a), (b).

Plaintiff alleges in the Complaint that defendants have not complied with the Philadelphia SIP. Specifically, plaintiff asserts that defendants have violated and continue to violate emission standards or limitations within the meaning of 42 U.S.C. § 7604(a)(1) and (f) by failing to meet the applicable December 1, 1998 deadline to fully implement the SIP's [second-phase] emission test pass/fail standards, or "cutpoints," for motor vehicles in the five-county Philadelphia ozone nonattainment area. The Philadelphia SIP refers to the state implementation plan designed to attain and maintain the ozone NAAQS by, *inter alia*, implementing the enhanced I/M program, including the enhanced I/M's December 1, 1998 compliance deadline and its final cutpoints, in the five Pennsylvania counties located within the Philadelphia ozone nonattainment area. Plaintiff now seeks to enforce the December 1, 1998 compliance deadline and the final cutpoints of the SIP. As discussed above, the EPA announced its approval of Pennsylvania's I/M SIP under § 7410 through a series of

Federal Register notices. 62 Fed.Reg. 4004 (Jan. 28, 1997); 63 Fed.Reg. 46,664 (Sept. 2, 1998); 64 Fed.Reg. 30,399 (June 8, 1999); 64 Fed.Reg. 32,411 (June 17, 1999). Because the SIP was approved by the EPA, it thus has the force and effect of federal law. *Id.* § 7413(a), (b).

The citizen suit provision of the CAA, 42 U.S.C. § 7604, provides that any person may enforce a SIP requirement against "any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) ..." under § 7604 if the alleged violation (1) fits within one of the definitions of an "emission standard or limitation" under § 7604(f), and (2) is "in effect under this chapter ... or under an applicable implementation plan." *Id.* § 7604(a)(1)(A), (f). The Act defines "emission standard or limitation under this chapter" to include, *inter alia,* "a schedule or timetable of compliance, emission limitation, standard of performance or emission standard," *id.* § 7604(f)(1), "any condition or requirement under an applicable implementation plan relating to ... vehicle inspection and maintenance programs," *id.* § 7604(f)(3), and "any other standard, limitation, or schedule established under ... any applicable State implementation plan approved by the Administrator [of EPA]...." *Id.* § 7604(f)(4). An "applicable State implementation plan" is defined as "the portion (or portions) of the implementation plan, or the most recent revision thereof, which has been approved under section 7410 of this title." *Id.* § 7602(q). Therefore, "any condition or requirement under an applicable implement plan relating to vehicle inspection and maintenance programs" that is "in effect under this chapter or an applicable implementation plan ..." has been incorporated into federal law for purposes of private citizen enforcement under the CAA. *See Dela. Valley Citizens' Council for Clean Air v.*

*Davis,* 932 F.2d 256, 264 (3d Cir.1991) ("Section 7604 permits citizens to commence civil suits in the district courts against persons who violate either emission standards or limitations promulgated under various sections of the Act or orders issued by the EPA or a state concerning those standards or limitations."); *Am. Lung Ass'n of N.J. v. Kean,* 871 F.2d 319, 325 (3d Cir.1989) (stating that "the explicit language of the Clean Air Act permits this suit, since the regulations at issue are requirements" that are specifically identified as "emission standards or limitations" under the citizen suit provision).

The approved SIP's December 1, 1998 compliance deadline and its final cutpoints fit within the definition of "any condition or requirement under an applicable implementation plan relating to ... vehicle inspection and maintenance programs," *id.* § 7604(f)(3), and thus are "emission standards or limitations." Further, the parties do not dispute and the Court agrees that the approved SIP's December 1, 1998 compliance deadline fits within the definitions of "a schedule or timetable of compliance" and a "schedule established under ... any applicable State implementation plan." *Id.* § 7604(f)(1), (4). Nor do the parties dispute that the enhanced I/M's final cutpoints fall within at least one of the definitions of "emission standard or limitation" in that they are "emission limitation[s]" or "emission standard[s]" or "any other standard [or] limitation established under an applicable State implementation plan." *Id.*

Furthermore, this Court recognizes that NAAQS themselves are not "emission standard[s] or limitation[s]" as defined by the Act. *See Coalition Against Columbus Ctr. v. City of New York,* 967 F.2d 764, 769 (2d Cir.1992) ("A cornerstone of this Court's interpretation of the citizen suit provision is the principle that an air quality standard established under the Clean

Air Act is not an 'emission standard or limitation.' ") (citations omitted). However, plaintiff does not seek to compel general compliance with the NAAQS. Rather, plaintiff seeks to enforce specific requirements aimed at achieving the NAAQS. Courts have recognized the importance of this distinction for purposes of enforcement under § 7604.

In *Coalition Against Columbus Center*, the Second Circuit held that it had jurisdiction over a suit brought under § 7604 to enforce a provision of the New York SIP because it was not directed at general compliance with the NAAQS:

> To further ensure that the carbon monoxide standard is attained in New York City, if an [Environmental Impact Statement] for a project proposal identifies a violation or exacerbation of the carbon monoxide standard, then the City commits to assure that mitigating measures will be implemented by the project sponsor or City, so as to provide for attainment of the standard by December 31, 1987 and maintenance of it thereafter.

*Id.* at 767 (quoting New York SIP § 3.6(B)). The court in *Coalition Against Columbus Center* explained that the issue before it was "whether an action to enforce [this SIP provision] constitutes an effort to compel general compliance with an air quality standard or whether it is an effort to enforce a specific strategy to attain an air quality standard." *Id.* at 770. The court distinguished the SIP provision before it from the SIP provision held to be unenforceable in *Wilder v. Thomas*, 854 F.2d 605 (2d Cir.1988), *cert. denied*, 489 U.S. 1053, 109 S.Ct. 1314, 103 L.Ed.2d 583 (1989). The provision at issue in *Wilder* provided that "all [carbon monoxide] hot spots will be eliminated by the end of 1987." *Id.* at 609. In distinguishing *Wilder*, the court in *Coalition Against Columbus Center* explained that the claim to enforce the hot spot "was simply an effort

to enforce the NAAQS for carbon monoxide and therefore could not be maintained under section 7604 of the Act." *Coalition Against Columbus Center*, 967 F.2d at 770. Moreover, "[t]he statement 'that all hot spots will be eliminated by the end of 1987 ... merely restated the [Act's] requirement that the NAAQS for carbon monoxide must be attained by December 31, 1987." *Id.* In contrast to *Wilder*, the *Columbus Center* court pointed out that the provision at issue in that case "does not merely restate the NAAQS, it further 'commits the City to take affirmative ... steps to achieve the [national ambient air quality] standard.'" *Id.* at 771 (quoting *Atlantic Terminal Urban Renewal Area Coalition v. N.Y.C. Dep't of Envtl. Protection*, 697 F.Supp. 157, 161 (S.D.N.Y.1988)).

The provision at issue in the instant case commits the Commonwealth to take specific steps in an effort to bring the Philadelphia nonattainment area into compliance with the Act. Specifically, the SIP requires that the Commonwealth utilize ASM emission tests for all 1981 and newer model year vehicles and all 1984 and newer model year light-duty trucks registered within the five-county Philadelphia area and that those ASM emission tests employ specific "final" pass/fail emission standards, or cutpoints, commencing December 1, 1998.

Because the SIP requirement in the instant case contains a list of affirmative steps that the Commonwealth must take to comply with its terms, it does not merely "restate[ ] the [Act's] requirement that the NAAQS ... must be attained," *id.* at 770, but rather contains a "valid, identifiable strategy" for achieving its ends. *Id.* at 771. Consequently, the enhanced I/M program—the final cutpoints and the December 1, 1998 deadline for implementation of the final cutpoints—created under the approved SIP are not designed to lead to general compliance with the NAAQS

itself, but with specific requirements established as a mechanism for achieving the NAAQS. These requirements of the SIP satisfy the threshold definition of an "emission standard or limitation" under § 7604(a)(1)(A).

In order to qualify as an enforceable "emission standard or limitation under this chapter," *id.*, a given requirement must be "in effect under this chapter ... or under an applicable implementation plan." *Id.* § 7604(f). This Court concludes that the "vehicle inspection and maintenance programs" at issue are in effect under an applicable implementation plan because they are included in the Pennsylvania SIP.[5] In this regard, by seeking to compel compliance with programs that are included in the EPA-approved Pennsylvania SIP, plaintiff is seeking to enforce federal law, not state law. The Third Circuit so held in *Concerned Citizens of Bridesburg,* ruling that the EPA-approved Pennsylvania SIP is a "federal regulation promulgated pursuant to the Clean Air Act," *id.* at 680, and that allegations of program violations which are part of that SIP, properly presented under the citizen suit provision of the CAA, constitute a "cognizable federal claim." *Id.* at 681.

Defendants attempt to distinguish *Concerned Citizens of Bridesburg* by contending that it predates Seminole Tribe and cites to § 7610, a provision of the CAA that does not implicate the issue of incorporation. This Court is not persuaded by defendants' arguments. As mentioned above, Seminole Tribe does not curtail Congress' power to authorize suits under *Ex parte Young,* such as the citizen suit

provision of the CAA. Furthermore, the Court agrees with plaintiff that a reading of the entire opinion supports the conclusion that the Third Circuit erroneously made reference in the opinion to § 7610—which speaks only to the affect of the CAA on other laws enforced by the EPA Administrator and the nonduplication of appropriations—intending to cite § 7410—which addresses SIPs and the EPA's role in approving them—in holding that "[t]he Pennsylvania SIP is a federal regulation promulgated pursuant to the [CAA]." 843 F.2d at 680.

In ruling that the EPA-approved SIP is federal law, this Court also relies on *Arkansas v. Oklahoma,* 503 U.S. 91, 110, 112 S.Ct. 1046, 117 L.Ed.2d 239 (1992), where the Supreme Court held that an EPA regulation requiring water pollution discharge permits to comply " 'with the applicable water quality requirements of all affected States[,]' 40 C.F.R. § 122.4(d) (1991) ... effectively incorporates into federal law those state-law standards the Agency reasonably determines to be 'applicable.' " The incorporation provision at issue in this case, § 7604(f), is even more explicit than that presented in *Arkansas v. Oklahoma.*

Moreover, the Court observes that a number of other courts have ruled that a specific provision of an EPA-approved state SIP is federal law and thus enforceable under the citizen suit provision of the CAA. *See Trustees for Alaska v. Fink,* 17 F.3d 1209, 1210 n. 3 (9th Cir.1994) ("Having 'the force and effect of federal law,' the EPA-approved and promulgated Alaska SIP is enforceable in federal courts.")

---

5. Other courts have reached the same conclusion in "suits against ... government actors that fail to comply with the specific requirements of a state or EPA implementation plan." *See Conservation Law Found. v. Fed. Highway Admin.,* 24 F.3d 1465 (1st Cir.1994) (citing *Wilder,* 854 F.2d at 613–15); *League to Save Lake Tahoe, Inc. v. Trounday,* 598 F.2d

1164, 1173 (9th Cir.), *cert. denied,* 444 U.S. 943, 100 S.Ct. 299, 62 L.Ed.2d 310 (1979); *Citizens Ass'n of Georgetown Comm. of 100 v. Washington,* 535 F.2d 1318, 1322 (D.C.Cir. 1976); *Nat'l Res. Def. Council, Inc. v. Train,* 510 F.2d 692, 700 (D.C.Cir.1974); *Council of Commuter Orgs. v. Metro. Transp. Auth.,* 683 F.2d 663, 670–71 (2d Cir.1982).

(quoting *Union Electric Co. v. E.P.A.*, 515 F.2d 206, 211 n. 17 (8th Cir.1975), *aff'd*, 427 U.S. 246, 96 S.Ct. 2518, 49 L.Ed.2d 474 (1976)); *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 335 (6th Cir.1989) ("If a state implementation plan ... is approved by the EPA, its requirements become federal law and are fully enforceable in federal court.") (citing 42 U.S.C. § 7604(a); 1 W. Rodgers, *Environmental Law: Air and Water* §§ 3.9–3.11 (1986)); *Communities For A Better Environment v. Cenco Refining Co.*, 180 F.Supp.2d 1062, 1068 (C.D.Cal.2001) ("Once approved by the EPA, the requirements and commitments of a SIP become binding as a matter of federal law upon the state.") (citing 42 U.S.C. § 7413(a)(2)); *Save Our Health Organization v. Recomp of Minnesota, Inc.*, 829 F.Supp. 288, 291 (D.Minn.1993) (ruling that plaintiff has a basis under the citizen suit provision of the CAA to challenge defendant's compliance with odor regulations incorporated into an EPA-approved state SIP).

## B. *Plaintiff May Enforce the Approved SIP's December 1, 1998 Compliance Deadline and its Final Cutpoints*

■ Defendants admitted, both at oral argument and in their pleadings, that they did not fully implement the final cutpoints by December 1, 1998, as required by the approved SIP. Complaint ¶ 22; Answer ¶ 22. Plaintiff may thus enforce the approve SIP's December 1, 1998 compliance deadline and its final cutpoints under § 7604 because defendants have violated "emission standards or limitations" under § 7604(f) that are "in effect under" the Act. *Id.* § 7604(a)(1)(A), (f). However, defendants attempt to avoid liability by arguing that genuine issues of material fact-defendants' projections of a high level of false vehicle emission inspection failure rates under the applicable final cutpoints for certain model year vehicles and the

possibility for future EPA action-exist to preclude summary judgment. Defs.' Br. at 15. Specifically, defendants maintain that they chose not to implement the final cutpoints because the failure rates at the final cutpoints for 1995 and older vehicles are significantly higher than expected, and the only explanation for such a large increase in failure rates is a significant level of false failures, which ultimately require motorists to make unnecessary repairs and negatively impact the integrity of the enhanced I/M program. Defendants also point to a letter dated April 12, 2001, from Margo T. Oge, Director, Office of Transportation and Air Quality, in which the EPA "strongly advises Pennsylvania not to implement the existing final cutpoints for 1995 and older vehicles until ... [EPA's] research is complete and final guidance is issued." In light of the EPA letter, defendants state that they have decided to await issuance of the study before implementation of the final cutpoints. *Id.* at 18. The Court concludes that such evidence is immaterial to the question of liability; it will, however, be considered in determining an appropriate remedy.

Liability in this case turns solely on whether a state "complie[s] with its own federally mandated plan." *Am. Lung Ass'n of N.J. v. Kean*, 670 F.Supp. 1285, 1289 (D.N.J.1987); *see also General Motors Corp. v. U.S.*, 496 U.S. 530, 110 S.Ct. 2528, 110 L.Ed.2d 480 (1990) (CAA action for injunctive relief is available "whenever a person is in violation of an 'applicable implementation plan' ... There can be no doubt that the existing SIP remains the 'applicable implementation plan' even after the state has submitted a proposed revision."); *U.S. v. Wheeling–Pittsburgh Steel Corp.*, 818 F.2d 1077, 1085–86 (3d Cir.1987) ("There is simply no statutory, regulatory, or case authority that support the district court's reliance on Wheeling's [SIP revision] application as a basis for relieving it

of its compliance schedule mandated by the statute, the SIP, and the Consent Decree until action on the application is completed. In so holding, the district court erred as a matter of law."); *Friends of the Earth v. Carey*, 535 F.2d 165, 169 (2d Cir.1976) ("[A] plan, once adopted by a state and approved by the EPA, becomes controlling and must be carried out by the state.").

Defendants have violated the CAA—they admit that they did not fully implement fully implemented the enhanced I/M program and thus, have failed to comply with the approved SIP. "[A] district court 'is obligated, upon a showing that the state has violated the plan, to issue appropriate orders for its enforcement.' " *Am. Lung Ass'n*, 670 F.Supp. at 1289 (quoting *Friends of the Earth*, 535 F.2d at 173). The Court observes that, if defendants are opposed to implementing the SIP provisions at issue, as they argued at length in the hearing, the Act provides them with the option of filing a revision to the SIP. *See Am. Lung Ass'n*, 871 F.2d at 329 ("If parties think that changes in circumstances make the requirements of the SIP unduly harsh, the proper course in general is to comply with administrative procedures for revising the SIP.") (citing 42 U.S.C. § 7410(a)(3)(A)); *Am. Lung Ass'n*, 670 F.Supp. at 1289 ("If [a state] doesn't like its ozone SIP or considers its obligations under the SIP to be undeserved, it should plead that case to the EPA") (citations omitted). Significantly, defendants have not filed a revision to the approved SIP with the EPA.

The Court thus concludes that plaintiff is entitled to judgment as a matter of law on the issue of defendants' liability. The Court next turns to the question of what remedy it should impose.

## C. The Court Will Not Exercise Its Equitable Powers To Delay Enforcement of the Applicable SIP

Defendants argue that, notwithstanding a judicial determination that plaintiff may enforce the applicable SIP under the citizen suit provision of the CAA, the Court has the discretion to refuse to order compliance. *See* Defs.' Br. at 16. Defendants in essence ask this Court, under the principles of equity, not to grant the requested injunction. In advancing this argument defendants explain that under the unique circumstances of this case—"that EPA has recommended [implementation of the ASM tests] be delayed" and that Commonwealth officials question the accuracy of the ASM tests—an injunction ordering the Commonwealth Defendants to implement the final ASM cutpoints is inappropriate. According to defendants, "it is not necessary to fully implement the cutpoints in order to meet the Commonwealth's emission reduction requirements" because the Commonwealth has "committed to a schedule whereby all model years vehicles subject to the Philadelphia—area inspection and maintenance program will be required to meet final cutpoints by the start of the 2005 ozone season" and "the Philadelphia area will also meet its 2002 emission reduction milestone." Complaint ¶ 20. Plaintiff, on the other hand, argues that this Court has no discretion but to order an injunction requiring the Commonwealth Defendants to comply with the December 1, 1998 deadline and its final cutpoints.

"A federal equity court may exercise its discretion to give or withhold its mandate in furtherance of the public interest, including specifically the interest in effectuating the congressional objective incorporated in regulatory legislation." *Natural Resources Defense Council, Inc. v. Train*, 510 F.2d 692, 713 (D.C.Cir.1974). However, this Court may not apply a traditional

equitable balancing test and refuse to issue an injunction if a violation of the CAA requires such relief. A court should not limit relief in the exercise of its equitable powers where "... a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity ..." *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 313, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982) (quoting *Porter v. Warner Holding Co.,* 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946)). In order to determine the limits on the equitable discretion of the district court under the CAA, the Court must evaluate the "purpose and language of the statute." *Wheeling–Pittsburgh Steel,* 818 F.2d at 1083.

■ The language of the CAA's citizen suit provision does not limit the Court's equitable discretion. That language provides that district courts shall have jurisdiction "to enforce such an emission standard or limitation." 42 U.S.C. § 7604(a). As defendants correctly point out, the language of that provision contains the term "enforce" and not "enjoin." In contrast, Congress explicitly used the word "enjoin" in CERCLA, which a district court in New Jersey has interpreted to require issuance of an injunction upon finding of a violation. *See New Jersey Dep't of Envtl. Protection v. Briar Lake Dev. Corp.,* 736 F.Supp. 62, 65 (D.N.J.1990). The CAA does not contain mandatory language; the language of the CAA does not support plaintiff's position—that this Court *must* issue an injunction upon a finding of a violation of the CAA.

The Court is mindful that the purpose of the CAA is to end slow and ineffective state implementation strategies. *See State v. Gorsuch,* 554 F.Supp. 1060, 1063 (S.D.N.Y.1983) (stating that the principle purpose of the CAA was to end state implementation strategies that "often have been slow and less effective than they might have been.") (quoting H. Rep. No.

91–1146, *reprinted in* 1970 U.S.C.C.A.N. 5356); *see also Train v. Natural Resources Defense Council,* 421 U.S. 60, 64–65, 95 S.Ct. 1470, 43 L.Ed.2d 731 (1975) ("Congress reacted by taking a stick to the States ... For the first time they were *required to attain air quality of specified standards,* and to do so within a specified period of time."). Thus, the Court must fashion a remedy that accomplishes such goals.

■ The Court is unpersuaded by defendants' argument that it should exercise its equitable power and delay implementation of the final cutpoints. As the court in *Am. Lung Ass'n v. Kean,* Civ. A. No. 87–288, 1987 WL 31764 (D.N.J. Nov. 19,- 1987), recognized, "Congress expressed an unmistakeable [sic] desire to attain acceptable levels of ozone pollution 'as expeditiously as practicable.' " *Id.* at *7. Pennsylvania authorized its own plan. The EPA reviewed and approved that plan. Private citizens have appropriately utilized the citizen suit provision in the Act to enforce that plan and this Court has determined that defendants have violated the Act by their failure to fully implement the enhanced I/M program within the December 1,1998 compliance deadline. Thus, the Court concludes the appropriate remedy for defendants' violation of the Act is injunctive relief.

The parties agreed in the Joint Statement of the Parties that implementation of the final cutpoints could be achieved in 38 weeks. Nevertheless, given the length of time since the Court heard oral argument and defendants' representations that the EPA has been researching revised ASM emission standards, the Court will conduct an evidentiary hearing before ruling on a schedule for implementation of the final cutpoints.

## IV. *CONCLUSION*

For the foregoing reasons, the Court grants plaintiff's motion for summary judgment in part and denies defendants' cross-motion for summary judgment. The Court declares defendants Mallory and Seif to be in violation of an "emission standard or limitation" of the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, and will order defendants to fully implement in the five-county Philadelphia ozone nonattainment area the current version of the final motor vehicle exhaust emission standards required by the Pennsylvania approved State Implementation Plan, codified in pertinent part in 67 Pa.Code Chapter 177, Appendix A, §§ 1(a)(2), 1(a)(3). The Court will conduct an evidentiary hearing to determine the schedule under which defendants will be required to fully implement the final motor vehicle exhaust emission standards. Plaintiff may submit a motion for attorneys fees and costs after the evidentiary hearing.

An appropriate order follows.

### *ORDER*

**AND NOW,** this 18th day of October, 2002, upon consideration Plaintiff's Motion for Summary Judgment (Document No. 7, filed March 21, 2001), Defendants' Cross–Motion for Summary Judgment (Document No. 9, April 27, 2001), plaintiff's Reply Brief in Support of Plaintiff's Motion for Summary Judgment and Opposition to Defendants' Cross–Motion for Summary Judgment (Document No. 13, filed May 29, 2001), defendants' Reply Brief in Support of Commonwealth Defendants' Cross–Motion for Summary Judgment (Document No. 14, filed June 12, 2001), Plaintiff's Unopposed Motion for Leave to Submit New Authority (Document No. 16, filed July 6, 2001), the Supplemental Brief of Commonwealth Defendants in Support of Cross–Motion for Summary Judgment (Document No. 20, filed September 14, 2001), and plaintiff's Supplemental Brief in Opposition to Defendants' Cross–Motion for Summary Judgment (Document No. 21, filed September 21, 2001), the Joint Statement of the Parties,[6] after oral argument, for the reasons set forth in the attached Memorandum, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART,** as follows:

1. **IT IS DECLARED** that defendants Bradley L. Mallory, Secretary, Pennsylvania Department of Transportation, and James M. Seif, Secretary, Pennsylvania Department of Environmental Protection, are in violation of an "emission standard or limitation" of the Clean Air Act, 42 U.S.C. § 7410 *et seq.;*

2. The Court will schedule an evidentiary hearing to determine a schedule under which defendants Bradley L. Mallory, Secretary, Pennsylvania Department of Transportation, and James M. Seif, Secretary, Pennsylvania Department of Environmental Protection, shall fully implement in the five-county Philadelphia ozone nonattainment area the current version of the final motor vehicle exhaust emission standards required by the Pennsylvania approved State Implementation Plan, codified in pertinent part in 67 Pa.Code Chapter 177, Appendix A, §§ 1(a)(2), 1(a)(3); 3. Plaintiffs may submit a motion for attorney fees and costs after the evidentiary hearing; and

4. In all other respects, Plaintiff's Motion for Summary Judgment is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Cross–Motion for Summary Judgment is **DENIED.**

---

6. The Clerk of the Court shall docket the Joint        Statement of the Parties.